MINUTE ENTRY
ROBY, M.J.
5/26/2021

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SARAH A WHALEN, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-1265 c/w 20-1266** |
| **MARK E. MORICE, ET AL.** | **SECTION: "B" (4)** |

LAW CLERK: Destinee N. Andrews
COURT REPORTER: Jodi Simcox

Appearances:  **Ashley L. Belleau, Joseph Jerome Long,** and **Ryan Michael Tucker** for Plaintiff David Bruce Spizer.
**Christopher A. D'Amour** for Defendant Douglas S Hammel.
**Mark E. Morice** for Defendant Mark E. Morice.
**Renee E. Goudeau** and **Mark Daniel Macnamara** for Defendants Roger Caillouet and New Orleans City.

## MINUTE ENTRY AND ORDER

Before the Court is Plaintiff Spizer's **Motion to Compel Disclosure and Discovery and for Appropriate Sanctions (R. Doc. 98)** filed by the Plaintiff seeking an order compelling Douglas S. Hammel to make a disclosure required by Rule 26(a) and to produce documents under Rule 34. The motion is opposed. R. Doc. 108.

Also, before the Court is Plaintiff Spizer's **Motion to Compel Disclosure and Discovery and for Appropriate Sanctions (R. Doc. 101)** filed by the plaintiff seeking as order compelling Mark E. Morice to respond to Spizer's Discovery Requests and provide initial disclosures. The motion is opposed. R. Doc. 110.

Also, before the Court is **David Bruce Spizer's Motion to Compel Deposition/Discovery and for Appropriate Sanctions (R. Doc. 102)** filed by the Plaintiff seeking an order compelling

MJSTAR: 01:09

the City of New Orleans ("NOLA") to produce deposition defendant, Det. Roger Caillouet ("Caillouet"), a key witness, under Rule 30. The motion is opposed. R. Doc. 109.

Also, before the Court is a **Motion for Protective Order/Quash (R. Doc. 107)** filed by Defendants Roger Caillouet and the City of New Orleans. The motion is opposed. R. Doc. 114.

These motions were heard on May 26, 2021 via videoconference.

I.    **Background**

On April 22, 2020, Plaintiff Sarah Whalen, Ted Ladner and Ladner's Industries Co ("Ladner's Pools") filed this action against Defendants Mark E. Morice, Det. Roger Caillouet, Det. Ty Wiltz, Sherriff Gerald Turlich, Jr., the City of New Orleans, Morice Law Firm, LLC, Douglas S. Hammel, The Hammel Law Firm, LLC, Keith Lobrono, Network Strategist, Gilsbar, LLC, and Continental Casualty Company, Inc. in the Eastern District of Louisiana. R. Doc. 1. This case is also consolidated with David Bruce Spizer's claims against Morice, Morice Law Firm, Caillouet, City of New Orleans, and Hammel. Both cases transpire from events that occurred in ongoing state court cases. R. Doc. 1.

Plaintiff Ladner alleges that he, Defendant Morice, and Morice's wife, Heidi Nuss, agreed that Ladner's Pools would construct a swimming pool in his backyard for $87,200.00. R. Doc. 1-15. Ladner then alleges that Morice issued a series of costly "change orders" that increased the price of the swimming pool to approximately $110,000, for which Morice had only paid a fractional deposit. R. Doc. 1-16. Thereafter, Morice allegedly presented Ladner with a "contract" that vastly differed from the original agreement and signed by a person who was neither affiliated with Ladner's Pools nor permitted or authorized to bind the company. *Id.* Ladner alleges that Morice said that he would sue Ladner if Ladner did not agree to build the $110,000 swimming pool at a financial loss. *Id.* Nuss and Morice then filed a lawsuit, *Heidi Nuss v. Ladner Industries*,

No. 2018-11691, in the Civil District Court for the Parish of Orleans (hereinafter, the "Pool Case"). Nuss was a named plaintiff in the Pool Case, and was represented by Morice, an attorney, who then also brought in Hammel of The Hammel Law Firm, LLC as co-counsel.

Ladnerin response hired Whalen to defend him in the Pool Case. On April 24, 2019, after the lawsuit was filed, Whalen allegedly drove on public roads and walked on the public sidewalk and alley near the Morice's home in the Lakeview neighborhood where the pool was under construction to photograph the back-yard area and the ditches leading to the front sidewalk.

As Whalen was leaving, she was confronted by Morice who allegedly positioned himself in the street in front of her vehicle and signaled for her to stop by outreaching the palm of his hand. Whalen alleges that Morice photographed and/or filmed her but she stepped into her vehicle so to allegedly lessen any potential risk of physical contact.

Whalen contends Morice's actions shocked her and she felt as though she could not safely leave because he had stopped her vehicle. Whalen, immediately thereafter, began to take photographs of Morice. Whalen stated at one point she attempted to leave by placing her car in reverse, but Morice ran and stood behind her car.

Whalen states she was eventually able to move her car forward and park it. Plaintiffs contend, however, that Morice, now in his vehicle, pulled his car parallel to Whalen's, blocking her ability to move the car from the parking space and drive away. Plaintiffs allege that no time did Morice identify himself or request that Whalen identify herself. Eventually Morice moved his car and Whalen drove away.

At some point between the initial interaction and then, Morice had called for police assistance to report a suspicious person. Morice indicated that he did not believe he was in danger. In response, the New Orleans Police Department ("NOPD") dispatched two officers. Defendant

3

Detective Roger Caillouet ("Det. Caillouet") of the NOPD arrived at the scene first and advised the dispatched officers that he would handle the matter. Plaintiffs believe that Caillouet was not dispatched to the scene by the NOPD but was contacted separately by Morice as the extra officer assigned to the Lakeview neighborhood.

Morice's and Det. Caillouet's discussion regarding the incident led Det. Caillouet to run the license plate of the vehicle described by Morice, which indicated that the vehicle was owned by Whalen and Spizer, the Plaintiffs in this suit and unmarried romantic partners. Det. Caillouet did not file an initial incident report, but a later filed supplemental report which indicated he conducted the License Plate Lookup for the vehicle described by Morice. According to Whalen, Det. Caillouet justified running her plates by stating the report that the vehicle was involved in a "hit and run." Whalen alleges that no such "hit and run" occurred, and Det. Caillouet falsely and wrongly concocted this event to justify the License Plate Lookup.

On May 2, 2019, Whalen filed a citizen's complaint against Morice, in his capacity as a reserve deputy of Plaquemines Parish Sheriff's Office (PPSO), for his conduct on April 24, 2019. Whalen complains Morice used law enforcement gestures to detain her vehicle in the public street outside of his property and prevented her from lawfully driving down the street by blocking in her car with his car. Whalen told the PPSO detective Wiltz that she was concerned that Morice ran her license plate and obtained private information about her.

Plaintiff Spizer also alleges Defendant Hammel, in representing in Nuss in the Pool Cases, mischaracterized Spizer as a bankruptcy attorney, which he contends it untrue. Spizer further contends that Hammel made many misrepresentations to the court in the Pool Case, which he claims were done maliciously as well as made fact statements in open court despite having any true firsthand knowledge. In addition, at some point, Morice filed a Motion for Temporary

4

Restraining Order, also currently pending in state court, against Spizer and allegedly referring to Spizer as a stalker.

Plaintiffs Whalen and Spizer seek damages relating to these incidents for violation of 42 U.S.C. § 1983, the Driver's Privacy Protection Act, defamation, abuse of process, abuse of right, intentional infliction of emotional distress, negligent infliction of emotional distress, malicious prosecution, general tort liability, and vicarious liability.

In connection with Spizer's first Motion to Compel (R. Doc. 98), Spizer contends that Defendant Hammel's discovery answers are deficient where Hammel refused to produce certain insurance policies, which Spizer contends he is entitled to should he seek to satisfy a future judgment. Spizer also mentions that he wants documents listed in Defendant's initial disclosures. R. Doc. 98-1, p. 2. Hammel opposes the motion contending "production of any and all insurance policies on which Hammel is an insured or beneficiary" is overbroad and necessarily encompasses irrelevant information. R. Doc. 108.

In connection with Spizer's second Motion to Compel (R. Doc. 101), Spizer complains that Defendant Morice's discovery responses are evasive and incomplete as Morice repeatedly refers Spizer to discovery produced in the ongoing state court cases. Defendant Morice, in opposition, contends that Plaintiff Spizer's discovery requests are overbroad and irrelevant. R. Doc. 110.

In connection with Spizer's third Motion to Compel (R. Doc. 102), Plaintiff Spizer seeks an order compelling the City of New Orleans ("NOLA") to produce Caillouet for deposition as a key witness.[1] Spizer contends that Caillouet was an active participant in the underlying events and

---

[1] Spizer's motion also mentions dates for potential 30(b)(6) deposition of NOPD, and the deposition of Officer Voight presumably the designated 30(b)(6) representative but does not appear to be seeking any relief as to the same.

has important firsthand knowledge of the facts. Spizer also points out that there has been no stay of discovery pending the resolution of the motion to dismiss.

The City of New Orleans and Detective Roger Caillouet, in both his individual and official capacities, oppose this motion. R. Doc. 109. Defendants state there was no true discovery conference as Spizer unilaterally subpoenaed Det. Caillouet for a deposition. R. Doc. 107. NOLA and Caillouet also moved for a Protective Order quashing possible depositions of Caillouet until the Court rules on his pending 12(b)(6) motion to dismiss in which he asserts the defense of qualified immunity. *Id.*

The Court issued a scheduling order establishing June 15, 2021 as the discovery deadline. R. Doc. 64.

**II.     Standard of Review**

Discovery of documents, electronically stored information, and things is governed by Federal Rule of Civil Procedure ("Rule") 34. Rule 34 allows a party to request the production of "any designated documents or electronically stored information" or "any tangible things." *Id.* Similarly, Rule 33 allows a party to serve another party written interrogatories which "must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Both Rule 33 and 34 allow a party to ask interrogatories and request production to the extent of Rule 26(b). Fed. R. Civ. P. 33(a)(2); 34(a).

Federal Rule of Civil Procedure 30 governs the requirements for depositions by oral examination, allowing a party to "depose any person, including a party, without leave of the court" except in certain cases where the parties have not stipulated to the deposition and if the deponent is confined in prison. Fed. R. Civ. P. 30(a)(1)-(2). Generally, notice for a deposition requires that the party requesting deposition "give reasonable written notice to every other party.... stat[ing] the

time and place of the deposition and, if known, the deponent's name and address." Fed. R. Civ. P. 30(b)(1). The noticing party must also state the method to be used for recording the testimony. Fed. R. Civ. P. 30(b)(3). Rule 30 is also limited by Rule 26.

Rule 26(b)(1) provides that parties may obtain discovery regarding relevant information to any claim or defense as long as it is nonprivileged. Rule 26(b)(1) specifies that "information within the scope of discovery need not be admissible in evidence to be discovered." Rule 26(b)(1) also specifies that discovery must be "proportional to the needs of the case, considering the important of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Rule 37 provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if:…(iii) a party fails to answer an interrogatory submitted under Rule 33, or (iv) a party fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B). An "evasive or incomplete" answer or production is treated the same as a complete failure to answer or produce. Fed. R. Civ. P. 37(a)(4). In addition, to alleging that the responding party has failed to properly cooperate with discovery, a motion to compel under Rule 37(a) must also "included a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1).

### III. Analysis

#### A. Spizer's Motion to Compel Hammel to Supplement Production (R. Doc. 98)

The first contested discovery request, Request for Production No. 12, seeks information and documents related to Defendant Hammel's homeowner's insurance and umbrella policies on which he was named an insured and/or beneficiary. Spizer complains that this information has not been disclosed as a mandatory under Rule 26(a)(1)(A)(iv) as it could be used satisfy all or part of a possible judgment in the action.

Defendant Hammel objects to the request as irrelevant. At the hearing, Hammel further clarified at the hearing that he did not have a personal umbrella insurance policy.

Here, the Court finds the request for the Homeowner's insurance policy is not relevant. Spizer is seeking damages from Hammel for defamation and invasion of privacy, both of which are intentional acts. Homeowner's insurance coverage excludes intentional acts. During the hearing, the parties' conceded as much. As such, it is not likely that any homeowner insurance policy by Hammel would cover the claims alleged.

The personal umbrella policy presents a different issue, however, because umbrella policies may include coverage for intentional acts to include liable, slander, defamation, and invasion of privacy. During the hearing, counsel for Hammel clarified that no such umbrella policy exists. This is a fact that should have been stated in Hammel's response, which would have obviated the need for judicial intervention. Hammel must amend his response to clarify that no umbrella policy exists and provide a verification for the interrogatory response. The Court finds, however, that Hammel's production satisfies the request. As such, the Court denies Plaintiff's Spizer's motion with respect to Request for Production No. 12 to Hammel.

B.  **Spizer's Motion to Compel Morice Supplement/Amend Discovery Requests Responses (R. Doc. 101)**

Turning next to Spizer's motion against Morice, Spizer first complains about Morice's initial disclosures. Specifically, Spizer contends that Morice did not produce documents mentioned in his initial disclosures. As such, Spizer seeks the Court compel Morice to make complete initial disclosures.

Morice states that the documents listed in his initial disclosures are documents referenced and produced in the ongoing state court actions. Morice further states that he did not produce an expert report listed because expert reports are not due, and the report is not yet finalized.

The motion to compel initial disclosure documents as duplicative. At the hearing, counsel for the Plaintiff verified that most the documents are already in their possession because they were produced in the state court actions. The expert report is not subject to initial disclosures, even though identified in initial disclosures. That was an error by counsel. Expert reports are governed by the scheduling order. As such, the Court will not compel production until the expert report deadline.

Next, the Court considers Interrogatories Nos. 5-7, 9,and 12-21, which seek a wide array of information from Morice. Plaintiff contends that the Defendant's answers are deficient where he continues to reference information and documents produced in the TRO and Pool Cases as opposed to relisting them in this case. Specifically, Spizer complains that answers to interrogatories that refer to deposition testimony given do not satisfy Rule 33. Spizer contends that Morice's Interrogatory Nos. 5-7, 9, and 12-21, contain impermissible references to deposition testimony perpetuated in the Pool Case.

Defendant agrees that general references to deposition testimony will not suffice, Defendant Morice nevertheless maintains that the discovery requests objections of relevance and overbreadth should be sustained. R. Doc. 110.

### i) Interrogatories Nos. 5 and 6

Interrogatory No. 5 seeks Morice identify communications to other co-defendants about Spizer, Whalen, or the Vehicle prior to the filing of this complaint, and Interrogatory No. 6 seeks the date, method, and contents of those communications. Morice objects to Interrogatories Nos. 5 and 6 on the grounds they are overbroad, irrelevant, and not proportional to the needs of the case.

Here, the Court is of the opinion that Interrogatory No. 5 is overbroad and a fishing expedition that would require Defendant to turn over information that is simply not relevant to the case and possibly privileged. Communications about the Plaintiffs or their vehicle is not relevant to the claims at issue. Additionally, there is no temporal limitation. In addition, it may have implications that collide with the attorney work-product doctrine, and, further require Rule 26 compliance and production of a privilege log. The Court, therefore, finds Interrogatories Nos. 5 and 6 overbroad denies Plaintiff's motion with respect to the same.

### ii) Interrogatory No. 7

Interrogatory No. 7 seeks to have Morice identify the nature and extent of his involvement in the Pool Case. Morice stated that he was the attorney for the Plaintiff Heidi Nuss.

Interrogatory No. 7 was answered and satisfied; therefore, the motion to compel is denied with respect to Interrogatory No. 7.

### iii) Interrogatory No. 9

Interrogatory No. 9 wants Morice to indicate whether he has ever received Peace Officer Standard and Training (POST) certification as well as date of certification and certifying entities.

While Morice, stated he has earned his POST certification and still holds POST certification, Morice directs Plaintiff Spizer generally to the files and discovery produced in the pending TRO and Pool Cases pending in state court.

Here, the information sought is clearly relevant to Plaintiff's §1983 claim. Morice must supplement answer to include the date of certification and certifying entities. As such, the Court grants Spizer's motion with respect to Interrogatory No. 9.

### iv) Interrogatory No. 12

Interrogatory No. 12 seeks "[w]hat personal knowledge did you have relating to Spizer before April 24, 2019, at approximately 6:29 p.m.?" R. Doc. 101-6, p. 15.

At the hearing, Morice indicated that this question was asked in deposition in state court. Morice further stated that he would supplement his response to identify the deposition transcript and corresponding page numbers of the transcript that contain this answer.

The Court, therefore, grants Plaintiff Spizer's with respect to Interrogatory No. 12 to the extent that Morice shall identify where in the record that Spizer can find his answer.

### v) Interrogatory No. 13

Interrogatory No. 13 seeks an explanation from Morice of how he came into possession of Whalen's motor vehicle records including the source of the information and chain of custody. Morice responded that he received the information from a private investigator that he hired to run the plates after the pool incident. He also states that he received some information from Spizer during Spizer's deposition. He states he does not know how the private investigator or Spizer got the information.

Morice answered the question and satisfies the request. As such, the Court denies Spizer's motion with respect to Interrogatory No. 13 to the extent it seeks further information.

### vi) Interrogatory No. 14

Interrogatory No. 14 asks Morice identify his personal knowledge of Spizer "between April 24, 2019, at approximately 6:29 p.m. and May 3, 2019?" R. Doc. 101-6, p. 17.

Again, at the hearing, Morice offered to supplement his answer and identify where in the state court records his answer is located. The Court, therefore, grants Plaintiff Spizer's with respect to Interrogatory No. 14 to the extent that Morice shall identify where in the record that Spizer can find his answer.

### vii) Interrogatory No. 15

Interrogatory No. 15 seeks the identification by Morice of communications with Spizer before May 3, 2019. R. Doc. 101-6, p. 18. In response, Morice stated he does not remember any prior communications or interactions other than Spizer sitting in his car outside Morice's residence.

Morice's response satisfies the request as the question was answers. Therefore, the motion to compel Interrogatory No. 15 is denied.

### viii) Interrogatory No. 16

Interrogatory No. 16 seeks Morice identify the evidence that Morice has that supported his filing a motion for temporary restraining order in state court. Morice states that Plaintiff already has this information.

At the hearing, it was clarified to the Court that the TRO motion is still pending and there has not been a hearing on the restraining order as it has been continued eight (8) times.

This is an improper question. A party is not required to list all evidence that supports their claim before a hearing is held or an exhibit list is due simply because the opponents seek it in a

discovery request. The Court, therefore, denies Spizer's motion with respect to Interrogatory No. 16.

### ix) *Interrogatories Nos. 17-21*

Interrogatories Nos. 17-21 seeks answers about Morice's personal knowledge of Spizer's conduct that made Morice fear for his life; Morice's characterization of Spizer as a stalker in the T.R.O. motion; details of the communications Morice or his law firm had with Spizer on May 3, 2019; Morice's conversation with Chloe Mattingly related to Spizer or Whalen; and Morice's personal knowledge of Spizer's objections to his T.R.O. motion. In response to all, Morice referred Spizer back to the state court cases.

Again, at the hearing, Morice offered to supplement his answer and identify where in the state court records his answer is located. The Court, therefore, grants Plaintiff Spizer's with respect to Interrogatories Nos. 17-21 to the extent that Morice shall identify where in the record that Spizer can find his answer.

### x)     *Attorneys' Fees*

The Court notes that an award of attorneys' fees is reserved to those attorneys who make a good faith effort to communicate and cooperate in discovery prior to seeking judicial intervention. Here, it is clear to the Court that litigants did not call each and confer in an attempt to resolve the issues that are the subject of this motion prior to the filing of the motion. Given the parties' failure to cooperate in discovery as well as the mixed disposition of this motion, the Court declines to award attorneys' fees for this motion.

### C. <u>Motion to Compel Det. Caillouet for Deposition (R. Doc. 102) and Motion for Protective Order/Quash Caillouet's Deposition (R. Doc. 107)</u>

Finally, the Court addresses the Plaintiff's request to NOLA to produce defendant Caillouet for a deposition. Plaintiff explains that Caillouet was an active participant in the underlying events, and, therefore, has important firsthand personal knowledge of the facts. Plaintiff Spizer issued a subpoena to Caillouet for a Zoom deposition. Spizer states that NOLA has not moved for a stay of discovery, and NOLA's intention to withhold Caillouet conflicts with the discovery schedule.

Defendant explains that Caillouet has asserted qualified immunity that precludes the deposition of Caillouet. Defendant details the improper issuance and ultimate withdraw of a subpoena, but then notes a notice of deposition was issued and ripe for the Court's adjudication.

Here, the Court guides the parties' attention to the Fifth Circuit's decision in *Webb v. Livingston*, 618 F. App'x 201 (5th Cir. 2015). In *Webb*, the Fifth Circuit stated that prior to a ruling on a motion to dismiss, in which the defense qualified immunity is asserted, that discovery orders must be narrowly tailored to uncover only those facts necessary to rule on the immunity claim. *Id.* at 210-11. The *Webb* Court further stated:

> Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. This immunity extends beyond a defense to liability to protect government officials from the burdens of litigation, including pretrial discovery, which is costly, time-consuming, and intrusive. Nevertheless, qualified immunity does not shield government officials from all discovery but only from discovery which is either avoidable or overly broad.

*Webb*, 618 F. App'x at 205–06 (internal quotations and citations omitted). Here, it is important to note in determining the reasonableness of the officer's conduct that "[t]he subjective intent of the [officer] is irrelevant." *Sanchez v. Swyden*, 139 F.3d 464, 467 (5th Cir. 1998).

Defendant Caillouet has filed a motion to dismiss asserting qualified immunity. R. Doc. 69. In this case, the claim against Detective Caillouet is that he ran a license plate check based upon a report of suspicious activity, which violated the plaintiffs' right to privacy. The question, therefore, based on these facts is whether the officer's conduct was objectively reasonable. The mover has not indicated that they need additional discovery to aid the Court in its determination of qualified immunity.

As the facts are laid out in the complaint, in order to rule on the motion to dismiss, the Court need only analyze Detective Caillouet's conduct from an objective perspective. Therefore, no further clarifications of the facts are required to rule on the immunity claim and discovery is not warranted. *See Webb*, 618 F. App'x at 211. As such, Spizer's motion to compel the deposition is denied. Caillouet's motion for protective order is granted.

### IV.  Conclusion

Accordingly,

**IT IS ORDERED** that Plaintiff Spizer's **Motion to Compel Disclosure and Discovery and for Appropriate Sanctions (R. Doc. 98)** is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Spizer's **Motion to Compel Disclosure and Discovery and for Appropriate Sanctions (R. Doc. 101)** is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Spizer's **Motion to Compel Disclosure and Discovery and for Appropriate Sanctions (R. Doc. 101)** is **GRANTED** with respect to Interrogatories Nos. 9, 12, 14, 17-21

**IT IS FURTHER ORDERED** that Spizer's **Motion to Compel Disclosure and Discovery and for Appropriate Sanctions (R. Doc. 101)** is **DENIED** with respect to Interrogatories Nos. 5-7, 13, and 15-16; as well as to the extent it seeks attorneys' fees.

**IT IS FURTHER ORDERED** that **David Bruce Spizer's Motion to Compel Deposition/Discovery and for Appropriate Sanctions (R. Doc. 102)** is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants City of New Orleans's and Caillouet's **Motion for Protective Order/Quash (R. Doc. 107)** is **GRANTED.**

New Orleans, Louisiana, this 28th day of May 2021.

*[signature]*

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**