**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **SARAH A. WHALEN, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-1265 C/W 20-1266** |
| | **REF: 20-1265** |
| **MARK E. MORICE, ET AL** | **SECTION "B"(4)** |

## ORDER AND REASONS

Before the Court are several motions: defendant Douglas Hammels motions for summary judgment (Rec. Docs. 127, 128, 134), defendants Roger Caillouet and City of New Orleans' (the "City Defendants") motions for summary judgment (Rec. Docs. 129, 136), defendant Mark Morice's motions for summary judgment (Rec. Docs. 130, 135)[1] and plaintiffs' motions for extension of time to complete discovery (Rec. Docs. 141, 159) and to expedite such motion (Rec. Doc. 142). Accordingly,

**IT IS ORDERED** that:

- Douglas Hammel's motions for summary (Rec. Docs. 127, 128) are **GRANTED**.

- Detective Roger Caillouet and City of New Orleans' motions for summary judgment (Rec. Doc. 129, 136) are **GRANTED**.

---

[1] Defendants previously filed individual motions to dismiss for failure to state a claim (Rec. Docs. 66, 67, 68, 69, 71). The motions to dismiss for failure to state a claim shall merge with the respective motions for summary judgment. Defendants Ty Wiltz, Gerald A. Turlich, and Keith Lobrano have been voluntarily dismissed from this action.

- Mark Morices's motions for summary judgment (Rec. Docs. 130, 135) are **GRANTED.**
- Plaintiffs' motion for extension of time to complete discovery (Rec. Docs. 141, 159) are **DENIED.**
- Plaintiffs' motion to expedite their motion for extension of time (Rec. Doc. 142) is **DISMISSED AS MOOT.**
- Supplemental jurisdiction over remaining state law claims is declined.
- All other pending motions are declined and **DISMISSED AS MOOT** per above rulings.  (Rec. Docs. 66, 67, 68 and 69 and 167)

**I.   FACTS AND PROCEDURAL HISTORY**

This action arises out of alleged personal and professional transgressions by several Louisiana-licensed attorneys and members of law enforcement. Plaintiff Sarah Whalen is an attorney representing co-plaintiffs Theodore A. "Ted" Ladner, Jr. and Ladner's Industries Co. (collectively the "Ladner Plaintiffs") in a separate state lawsuit involving defendant Mark E. Morice and his late wife Heidi Nuss. Rec. Doc. 1 at 7; see *Nuss v. Ladner's Indus. Co.*, No. 2018-11691, Civ. Dist. Ct., Orleans Par. Ms. Nuss contracted with Ladner's Pools to construct a swimming pool at their home in the Lakeview neighborhood.  A dispute arose about construction of the pool and litigation followed. Mr. Morice and defendant Douglas S.

2

Hammel represented Ms. Nuss.

On April 24, 2019, Whalen, in her capacity as the Ladner Plaintiffs' attorney, visited the Morice home to investigate claims and document the construction site that was visible to the public. Rec. Doc. 1 at 9. Whalen photographed the condition of the construction site at the Morice home while standing either on the public street or sidewalk. *Id.* During this time, defendant Mark Morice confronted Whalen, took his own photographs and videos of Whalen and her car, allegedly pursued Whalen in his vehicle, and called 9-1-1 to report a suspicious person. *Id.* at 9-11.

The New Orleans Police Department dispatched officers Roy Shackelford, Joseph Maher, Lucretia Gantner, and defendant Detective Roger Caillouet to the scene. Rec. Doc. 156 at 12. When Detective Caillouet arrived, neither Whalen nor Morice were present. *Id.* Detective Caillouet ran the license plate number that Morice had provided the 9-1-1 dispatcher and marked the incident's disposition as "Gone on Arrival." *Id.*

Plaintiffs David Bruce Spizer and Sarah Whalen are unmarried romantic partners and are listed as co-owners of Whalen's vehicle. Rec. Doc. 1 at 14. On May 3, 2020, Morice subsequently commenced a second lawsuit in state court and filed a Motion for a Temporary Restraining Order against Whalen, Spizer, and the Ladner Plaintiffs, *id.* at 17, in the Civil

District Court for Orleans Parish. *Id.* at 16; *see Morice v. Whalen*, No. 19-4676, Civ. Dist. Ct., Orleans Par. Whalen alleges that Detective Caillouet provided her and Spizer's identities to Morice after he looked up her vehicle and Morice used that information to file his TRO against plaintiffs. Rec. Doc. 1 at 22. Morice contends that he hired his long-term private investigator, Keith Lobrano, to determine who owned the vehicle that was parked outside of his home taking photographs. Rec. Doc. 156 at 15.

Morice accused plaintiffs of engaging in a pattern of stalking, harassing, and intimidating Morice and his family. *Id.* at 17. The court issued a restraining order on May 6, 2019, enjoining plaintiffs from stalking, harassing, and intimidating Morice and his family. *Id.* 24. Plaintiffs argue that the motion for the TRO and Hammel's statements during the state litigation are the basis for their defamation claims against Hammel and Morice. Rec. Docs. 62 at 13, 63 at 12.

Whalen and the Ladner Plaintiffs filed this lawsuit on April 22, 2020; David Spizer filed his separate lawsuit that same day, and the Court consolidated the two matters on July 7, 2020. Rec. Doc. 13. Plaintiffs allege defendants violated their rights under 42 U.S.C. § 1983 and under the Driver's Privacy Protection Act; plaintiffs also accuse defendants of defamation, invasion of privacy, abuse of process, abuse of right,

4

intentional infliction of emotional distress, malicious prosecution, and general tort liability. Rec. Docs. 62, 63.

## II. PARTIES' CONTENTIONS

Plaintiffs Sarah Whalen and David Bruce Spizer assert that (1) Morice personally contacted Detective Caillouet after calling 9-1-1 to report a suspicious person outside of his house, (2) that Detective Caillouet transmitted the ownership information of the vehicle to Morice as a professional courtesy because Morice is a reserve deputy for Plaquemine Parish Sheriff's Office, and (3) that Morice and Detective Caillouet conspired to concoct a story that a vehicle with plaintiffs' license plate was involved in a hit and run in order to justify running the license plate. Rec. Docs. 62 at 6-7, 17; Rec. Docs. 63 at 14-18. Plaintiffs seek relief under the DPPA and under § 1983 for these violations against Detective Caillouet. Spizer alleges that because Detective Caillouet conducted an "illegal, unreasonable, and warrantless search and seizure of Spizer's personal information" without probable cause, Caillouet violated Spizer's Fourth Amendment rights. Rec. Doc. 63 at 15. He also alleges that Detective Caillouet violated his Fourteenth Amendment right to privacy, which amounted to a "deprivation of liberty, without due process of law." *Id.* at 15-16. Finally, Spizer seeks relief under § 1983 for the aforementioned conspiracy claim. Rec. Doc. 63 at 16.

Morice and Detective Caillouet have denied these allegations. Morice testified that he does not believe he and Detective Caillouet have even met before. Rec. Doc. 129-1 at 5. Further, the Orleans Parish Communications ("OPCD") records indicate that Detective Caillouet was dispatched to the scene through the OPCD dispatcher after Morice made the 9-1-1 call reporting a suspicious person. Rec. Doc. 129-4 at 2-4, 8. Moreover, Morice admitted to hiring Keith Lobrono, a private detective, to identify the owners of the vehicle during his deposition for the state court proceeding, *id.* at 56, and in his motion for a temporary restraining order. *Id.* at 40. He then testified to hiring Lobrono again during his deposition for the instant matter. Rec. Doc. 129-1 at 7. Keith Lobrono swore in his affidavit that Mark Morice called him to inquire about the ownership of the said vehicle, Lobrono used a service called DENSPRI, LLC to retrieve the necessary information, and then he called Mark Morice with the information. Rec. Doc. 129-4 at 64. Lobrono also swore that he did not receive vehicle information from Detective Caillouet or from any other source other than DENSPRI, LLC. *Id.*

Detective Caillouet asserts that he did not need to justify running a license plate when he responded to the 9-1-1 call reporting a suspicious person and has denied authoring any reports indicating the vehicle was involved in a hit and run. Rec. Docs. 129-1 at 8, 129-4 at 25-26, 29-30. Morice also testified that he

6

did not report any vehicle involved in a hit and run. Rec. Doc. 129-1 at 8. Moreover, NOPD conducted an exhaustive search for an alleged hit and run report and found no document, report, or any other indication regarding a hit and run for the vehicle. Rec. Doc. 129-7.

## LAW AND ANALYSIS

### A.  Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). *See also* T*IG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court should view all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006). Mere conclusory allegations are insufficient to defeat summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If and when the movant carries this burden, the non-movant must then go beyond the pleadings and present other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). "This court will not assume in the absence of any proof that the nonmoving party could or would prove the necessary facts, and will grant summary judgment in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the [non-movant]." *McCarty v. Hillstone Rest. Grp.*, 864 F.3d 354, 357 (5th Cir. 2017).

### B. The Driver's Privacy Protection Act ("DPPA")

Detective Caillouet asserts that (1) his actions constituted a "permissible use" and (2) he never disclosed any information regarding the license plate look up to Mark Morice. To state a claim under DPPA, a plaintiff must allege (1) a defendant knowingly

8

obtained, disclosed, or used personal information; (2) from a motor vehicle record; (3) for a purpose not permitted. 18 U.S.C. § 2724(a); *Taylor v. Acxiom Corp.*, 612 F.3d 325, 335 (5th Cir. 2010). Under DPPA, disclosure of personal motor vehicle information is generally prohibited, but there are "permissible uses" of such information, including: "For use by any … law enforcement agency, in carrying out its functions …" 18 U.S.C. § 2721(b).

Plaintiffs aver that there is a genuine issue of fact as to the source of the motor vehicle information but provides nothing more than conjecture and unsubstantiated allegations to refute the overwhelming evidence defendants provided. First and foremost, Detective Caillouet was on-duty, working an NOPD overtime shift for the Lakeview Crime Prevention District when he was dispatched by OPCD to respond to Mark Morice's 9-1-1 call and it was permissible for him to look up the ownership information for the license plate of the vehicle involved. *See Darling v. Falls*, 236 F. Supp. 3d 914, 923 (M.D.N.C. 2017). Detective Caillouet needed no other justification to look up the license plate after Morice reported a suspicious person photographing his house and provided the make and model of the car and the car's license plate number. Plaintiffs try to link the proximity in time Detective Caillouet logs the incident in his daily activity report to the timestamp of Morice locating YouTube videos featuring Whalen and photographing the computer screen showing her image to prove that Detective

9

Caillouet must have shared the plaintiffs' information with Morice. Rec. Doc. 136 at 7. The latter conclusions were whether Morice was forthcoming during his depositions is not at issue here. The Court does consider that Morice may have known Whalen's identity before getting the car owner's information from Lobrano as Whalen is the counsel of record in the pool case involving Morice's wife. It does not take a stretch of the imagination to assume Morice may have recognized Whalen at that time.

Further, Detective Caillouet was acting in his capacity as a law enforcement officer and was "carrying out [his] functions" when he answered OPCD's dispatch. His actions were appropriate under the circumstances and permissible under the DPPA. Plaintiff's speculative theory regarding how Morice received ownership information from the license plate lookup is unsupported and irrelevant.

However, assuming Detective Caillouet provided the information to Morice, Detective Caillouet is entitled to qualified immunity. To overcome qualified immunity, plaintiffs must prove that (1) the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011). The Eleventh Circuit, in *Watts v. City of Miami*, held that it "is not obviously clear that an officer obtaining information for his own use is not within

10

the permissible use" of the DPPA. *Watts v. City of Miami*, 679 Fed. App'x 806, 809 (11th Cir. 2017). Moreover, it is well established that "not every disclosure of personal information will implicate the constitutional right to privacy" and the "personal rights found in the guarantee of personal privacy must be limited to those which are fundamental or implicit within the concept of ordered liberty." *Cooksey v. Boyer*, 289 F.3d 513, 515-16 (8th Cir. 2002) (internal quotation marks omitted). "[T]o violate the constitutional right of privacy the information disclosed must be either a shocking degradation or an egregious humiliation to further some specific state interest, or a flagrant breach of a pledge of confidentiality which was instrumental in obtaining the personal information." *Id.* at 516 (internal quotation marks omitted). Both the Fourth Circuit and Eleventh Circuit have found no constitutional right to privacy in the information protected by the DPPA. *See Pryor v. Reno*, 171 F.3d 1281, 1288 n.10 (11th Cir. 1999), *rev'd on other grounds*, 528 U.S. 1111 (2000); *Condon v. Reno*, 155 F.3d 453, 464-65 (4th Cir. 1998), *rev'd on other grounds*, 528 U.S. 141 (2000). To overcome the qualified immunity defense, plaintiffs would have to show that no reasonable officer in Detective Caillouet's position could have believed that he was accessing plaintiffs'' driver's information for a permissible use under the DPPA. *Watts v. City of Miami*, 679 Fed. App'x 806, 810 (11th Cir. 2017). Plaintiffs failed to do so.

### C. Remaining claims against all defendants

Subject matter jurisdiction in this matter is based on the allegation that that Detective Caillouet and Mark E. Morice violated the Driver's Privacy Protection Act ("DPPA"). Because plaintiff's remaining constitutional claims are all predicated on Detective Caillouet furnishing Morice with information ordinarily protected under the DPPA, has brought nothing more than tenuous evidence to refute the overwhelming testimony, official reports, and affidavits that Detective Caillouet and Mark Morice did not act in any prohibitive manner, and that, as mentioned above, the type of protected information under the DPPA does not rise to the level of a constitutional violation, the remaining § 1983 claims should be dismissed as well.

District courts have discretion to decline to exercise jurisdiction over state law claims under 28 U.S.C. § 1367. Courts may decline supplemental jurisdiction over a state law claim if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). Courts also consider the common law factors of judicial economy, convenience, fairness, and comity. *Mendoza v. Murphy*, 532

F.3d 342, 347 (5th Cir. 2008). District courts generally should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial. *Brookshire Bros. Holding v. Dayco Products*, 554 F.3d 595, 603 (5th Cir. 2009). No single factor is dispositive, but the balance of these factors favors declining supplemental jurisdiction.[2]

This matter has been pending since April 2020 and discovery is closed. While these facts are more likely to weigh in favor of retaining jurisdiction, *e.g., Mendoza v. Murphy*, 532 F.3d 342, 347 (5th Cir. 2008), the particular circumstances of this case support declining supplemental jurisdiction. Plaintiffs raised two arguments why this court should retain supplemental jurisdiction: (1) they would have to file a new complaint in state court and they will endure more costs, and (2) they are concerned with a timely disposition because they are still waiting on a ruling in the aforementioned state court case. Neither of these arguments are convincing.

First, there is always a cost to litigation. However, the expended and anticipated resources in this case are not so consequential to support retaining jurisdiction. The docket has

---

[2] The pleadings filed in this case can be summarized as largely relitigating the facts in the state cases regarding the construction of the pool and Morice's TRO. Federal courts are an inappropriate venue for such frivolous attempts to relitigate issues decided in state court or somehow seek a review of the state court's rulings on questions of state law. All licensed attorneys involved in those state cases are subject to being admonished for wasting resources and time.

less than two hundred entries and the court has not previously ruled on any other substantive motions. *Cf. Brookshire Bros. Holding v. Dayco Products*, 554 F.3d 595 (5th Cir. 2009) (concluding the district court abused its discretion when it declined to exercise supplemental jurisdiction after the case had generated more than 1,300 entries in the docket, the district court had decided forty-one, fourteen *Daubert* motions, and seven other motions *in limine*); *see Alphonse v. Arch Bay Holdings*, 618 Fed. App'x 765 (5th Cir. Jul. 13, 2015)(finding the parties expended substantial resources, but not to the exceptional level as *Brookshire Bros. Holding*). Further, plaintiffs have belatedly identified expert witnesses or submitted late expert reports beyond court-ordered deadlines. See Rec. Doc. 146. There are few fact witnesses apart from the parties themselves. Rec. Docs. 121, 122, 123, 125. Finally, a significant waste of resources was of the parties' own making, i.e., not fully cooperating with each other during discovery, failing to confer to prepare the pre-trial order, failing to submit joint bench books as directed, and failing to meet expert identification and reporting deadlines as noted above. Rec. Docs. 119, 146, 166, 179.

Further, retaining jurisdiction does not provide the type of relief for the separate pending state court action. Plaintiffs have the right to seek appellate review for the disposition of their state case. The filing a second action in state court has

14

no bearing on the first. *Law Indus. v. Bd. of Supervisors,* 300 So.2d 21, 26 (La. App. 1 Cir. 03/02/20); ("Mandamus, codified in La. C.C.P. art. 3862, *et seq.*, is an extraordinary remedy, to be applied where ordinary means fail to afford adequate relief." (citing *Hoag v. State*, 889 So. 2d 1019, 1023 (La. 12/01/04). Lastly, the foundation for this action arose primarily from conduct redress-able under state laws.

Accordingly, this Court declines to exercise supplemental jurisdiction and the remaining state law claims are best addressed in the forum from which they arose.

### D. Extending Discovery

Finally, plaintiffs ask this Court to extend discovery for the limited purpose of obtaining NOPD recordings of Whalen visiting the 3rd Precinct to corroborate her allegation that she was informed that NOPD's computer systems indicated that her vehicle was involved in a "hit and run." Rec. Doc. 141-1. The City Defendants timely responded to written discovery stating no such recordings were found for the time period plaintiff allegedly visited the precinct between August 27, 2019 and September 5, 2019, as requested. Rec. Doc. 159-1. In fact, defendants widened the search parameters and looked for footage of any such interaction across an entire month between August 20, 2019

15

to September 20, 2019 as well as from November 4, 2019 to November 11, 2019 and found no footage of Whalen visiting the 3rd Precinct. Rec. Doc. 159 at 2. The City Defendants maintain that they are unable to produce video footage or police reports—original or supplemental—that do not exist and never existed.

This Court has the inherent power to enforce its scheduling order and FRCP 16(b) provides that a scheduling order "may be modified only for good cause and with the judge's consent." *Valero Mktg. & Supply Co. v. M/V ALMI Sun*, No. 14-cv-2712, 2016 WL 9412610, at *1 (E.D. La. January 8, 2016) (citing *Flaska v. Little River Marine Constr. Co.*, 389 F.2d 885, 886 & n.3 (5th Cir. 1968)); Fed. R. Civ. P. 16(b)(4). Whether to grant or deny a continuance is within the sound discretion of the trial court. *United States v. Alix*, 86 F.3d 429, 434 (5th Cir. 1996). In deciding whether to grant a continuance, the Court's "judgment range is exceedingly wide," for it "must consider not only the facts of the particular case but also all of the demands on counsel's time and the court's." *Streber v. Hunter*, 221 F.3d 701, 736 (5th Cir. 2000) (internal citations omitted).

The record shows the City did exhaustive searches to locate alleged recordings for all periods requested and beyond. Plaintiffs have not provided supportive reasons to reopen discovery. Moreover, any such footage would be irrelevant to this case, because as explained above, Detective Caillouet's actions

were permissible under the DPPA and otherwise entitled to good faith immunity. As such, good cause does not exist to extend discovery on this issue.

New Orleans, Louisiana, this 17th day of September, 2021

_____
SENIOR UNITED STATES DISTRICT JUDGE